UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR 06-15-01 S |
| | : | |
| RICHARD PAIVA, JR. | : | |

## REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant Richard Paiva, Jr. ("Defendant"), is in violation of the terms of his supervised release and, if so, for a recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, hearings were conducted on January 17, February 11, February 15, and April 15, 2008. At the February 11, 2008, hearing, Defendant, both personally and through counsel, waived a violation hearing and admitted that he had violated the terms of his supervised release. Based on that admission, I find that Defendant has violated supervised release. However, after considering all of the circumstances, especially Defendant's behavior since February 15, 2008, I recommend that Defendant be continued on his original term of three years supervised release with special conditions.

### Background

On January 5, 2007, Defendant appeared before United States District Judge William E. Smith after having pled guilty to assault on a federal officer, a Class D felony, and was sentenced to fifteen (15) months incarceration, three years supervised release, and a $100 special assessment. As special conditions of that supervised release, Defendant was to participate in and

satisfactorily complete a program approved by the probation office for the treatment of narcotic addiction or drug and alcohol dependency which included testing (up to 72 tests per year) for the detection of substance use or abuse. Further, Defendant was ordered to participate in a mental health treatment program as approved by the probation office, until such time as Defendant was released from the program by the probation office. Defendant was required to follow the medication regimen ordered by his mental health provider and to comply with lab requirements. Also, Defendant was to refrain from all contact with Jennifer Dore, unless that contact was approved and occurred through the probation office.

Supervised release commenced on January 7, 2008, with an expiration date of January 6, 2011. On or about January 16, 2008, U.S. Probation Officer David A. Picozzi ("U.S.P.O. Picozzi") initiated a Petition for Warrant for Offender under Supervision (the "Petition"), alleging that Defendant had violated one condition of his supervised release. See Petition at 1-2. In response to the Petition, Judge Smith ordered the issuance of a warrant, see id. at 2, and on January 17, 2008, Defendant appeared on the warrant before this Magistrate Judge to answer to the Petition, see Docket.

**The Violation**

The Revised[1] Supervised Release Violation Report (the "Revised Violation Report") states that Defendant violated the following condition of supervision in the manner indicated:

**Standard Condition: Defendant shall not leave the judicial district without permission of the court or the probation office.**

---

[1] The Supervised Release Violation Report dated January 16, 2008, was revised to correct the calculation of Defendant's applicable guideline range of imprisonment. See Revised Supervised Release Violation Report (the "Revised Violation Report") at 3.

Defendant traveled to Orlando, Florida, on January 9, 2008, without the express permission of the Court or the probation office. By way of background, on January 7, 2008, Defendant was released from the custody of the Bureau of Prisons to commence a thirty-six (36) month term of supervised release. He reported to the probation office on January 9, 2008, which was within seventy-two hours of release, as required. During that meeting, U.S.P.O. Picozzi explained the standard and special conditions of supervision, including condition #1, that a defendant may not leave the judicial district without permission of the court or probation officer. Defendant affixed his signature to the conditions, attesting that he fully understood them. Prior to ending the meeting, U.S.P.O. Picozzi explained to Defendant that they would meet at Defendant's residence on January 11, 2008, at which time U.S.P.O. Picozzi would have treatment referrals available and discuss them with Defendant.

The probation office attempted to contact Defendant on January 11, 2008, as scheduled, to provide him with details of the referral arranged for mental health treatment. A visit was made to 40 Muriel Street, North Providence, Rhode Island, the address at which Defendant had indicated to his probation officer that he was residing. The resident of that address, a friend of Defendant, advised that he had offered to have Defendant temporarily reside with him, but he had not seen or heard from Defendant since prior to Defendant's release.

Further investigation during the ensuing days resulted in leads that suggested Defendant may have left the district without permission. The probation office's investigation ultimately led to Southwest Airlines where it was confirmed that Defendant traveled from T.F. Green Airport in Rhode Island to Orlando, Florida, on January 9, 2008, departing at 1:40 p.m., shortly after his initial meeting with the probation office. He traveled

with his girlfriend, Lisa Wild, who had purchased the tickets on November 18, 2007. The investigation also uncovered that Defendant was due to return to Providence on January 16, 2008, on a Southwest flight scheduled to arrive at 2:35 p.m. Judge Smith issued a supervised release violation warrant, and the U.S. Marshals Service was present at the airport upon the flight's arrival. The Marshals Service confirmed that Defendant was aboard the flight. However, the deputy marshals ultimately decided not to approach Defendant but instead contacted defense counsel regarding the outstanding warrant. The Marshals Service and defense counsel agreed that Defendant would be contacted by counsel and instructed to surrender on the morning of January 17, 2008.

**Travel**

On January 16, 2008, Judge Smith ordered the issuance of a warrant for Defendant to appear to answer to the Petition. See Petition at 2. The warrant was executed, and Defendant appeared before this Magistrate Judge on January 17, 2008. At that time Defendant was advised of the Petition and of the grounds for the alleged violation. Defendant requested a violation hearing, and the violation hearing was scheduled for February 4, 2008, at 2:00 p.m. The Court granted Defendant's Motion to Enlarge Time for Conduct of the Violation Hearing (Document #41), and the hearing was continued to February 11, 2008. At that hearing, Defendant, both personally and through counsel, waived a violation hearing and admitted to the violation contained in the January 28, 2008, Revised Violation Report. This admission satisfied the Court that there was an adequate basis for finding that Defendant had violated the conditions of supervision. The Court then continued the matter four days to February 15, 2008, to allow the probation office to set up mental health treatment and also to investigate the possibility of home confinement with electronic monitoring.

At the February 15th hearing, the Court continued the matter sixty days to allow Defendant to demonstrate that he could comply with the terms of his supervision. Defendant was released on home confinement with electronic monitoring and the special condition that he attend mental health counseling.

On April 15, 2008, Defendant appeared for the scheduled sixty day review. The Court announced that it had received a report from Senior United States Probation Officer Brian Pletcher ("U.S.P.O. Pletcher") that Defendant had been fully compliant with the terms of his home confinement and mental health treatment. After receiving sentencing recommendations from both the Government and the defense, the Court stated that it would recommend that Defendant be continued on his original sentence of three years supervised release with special conditions and issue a report and recommendation so stating. This is that Report and Recommendation.

## Law

### Statutory Provisions

Section 3583(e)(2) of Title 18 of the United States Code ("U.S.C.") provides that if the court finds a defendant to be a violator of the conditions of supervised release, the court may extend the term of supervised release if less than the maximum authorized term was previously imposed and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Fed. R. Crim. P. relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision. In this case the maximum term of supervised release is three years. A term of three years has already been imposed. Therefore, supervised release cannot be extended.

Pursuant to § 3583(e)(3) of Title 18 of the U.S.C., the court may, after considering certain statutory factors set forth in § 3553(a), revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the court, pursuant to the Fed. R. Crim. P. applicable to revocation of supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release. However, a defendant whose term is revoked under this paragraph may not be required to serve more than two years in prison if the offense that resulted in the term of supervised release was a class C felony or class D felony. In this case, Defendant was on supervision for a class D felony. Therefore, he may not be required to serve more than two years imprisonment upon revocation.

Section 3583(h) of Title 18 of the U.S.C. provides that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release (here three years), less any term of imprisonment imposed upon revocation of supervised release.

**Sentencing Guidelines**

Section 7B1.1 of the United States Sentencing Guidelines ("U.S.S.G.") provides for three grades of violations. Section 7B1.1(a) of the U.S.S.G. states that a Grade A violation consists

of (A) conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense,[2] or (iii) involves possession of a firearm or destructive device; or (B) any other offense punishable by a term of imprisonment exceeding twenty years. Conduct consisting of any other offense punishable by a term of imprisonment exceeding one year constitutes a Grade B violation. Conduct constituting an offense punishable by a term of imprisonment of one year or less, or violation of any other condition of supervision, is classified as a Grade C violation. Section 7B1.1(b) provides that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade. In this case, Defendant has committed a Grade C violation.

Pursuant to §7B1.3(a)(1) of the U.S.S.G., upon a finding of a Grade A or B violation, the court shall revoke supervised release. Since Defendant has committed a Grade C violation, the Court may revoke, extend, or modify the conditions of supervision.

Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(1) states that where the minimum term

---

[2] The term "controlled substance offense" is defined in §4B1.2(b) of the U.S.S.G.

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. §4B1.2(b).

of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e) for any portion of the minimum term. Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(2) states that where the minimum term of imprisonment determined under §7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. The first provision applies in this case.

According to §7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under §7B1.4. In this case, there is no outstanding restitution, fine, community confinement, home detention, or intermittent confinement.

Section 7B1.3(g)(2) of the U.S.S.G. provides that where supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the court may include a requirement that the defendant be placed on a term of supervised release upon release from imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by

statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. See id. (citing 18 U.S.C. § 3583(h)). In this case, the authorized statutory maximum term of supervised release is three years.

Pursuant to §7B1.4(a) of the U.S.S.G., the criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision. In this instance, Defendant had a criminal history category of IV at the time of sentencing. The Revocation Table contained in §7B1.4(a) of the U.S.S.G. provides that, for a Grade C violation with a criminal history category of IV, an imprisonment range of 6 to 12 months is warranted.[3]

Section 7B1.5(b) of the U.S.S.G. states that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered for time previously served on post-release supervision.

**Disposition**

**Government's Recommendation**

The Government recommended a term of imprisonment of six months followed by a term of supervised release for thirty months. Assistant United States Attorney Kenneth Madden argued that Defendant had shown a blatant disregard for the Court's orders by leaving the judicial district to go to Florida after being clearly instructed that he could not do so without the express permission of the court or the probation office.

**Defense's Recommendation**

Defense counsel, George West, recommended that Defendant be

---

[3] The Court of Appeals for the First Circuit has held that Chapter 7 policy statements (including §7B1.4) are advisory rather than mandatory. See United States v. Ramirez-Rivera, 241 F.3d 37, 40 (1st Cir. 2001); United States v. O'Neil, 11 F.3d 292, 302 n.11 (1st Cir. 1993).

continued on his original term of supervised release. Mr. West noted that Defendant had admitted to the violation and had accepted responsibility for his actions. Mr. West also cited the fact that Defendant had fully complied with the terms of his sixty day period of home confinement and with his mental health counseling. Defendant declined the opportunity to speak.

**Court's Recommendation**

As the travel of this matter affects the Court's recommendation, it is recounted in detail. The Court initially detained Defendant when he appeared on the warrant on January 17, 2008. It did so even though he had voluntarily surrendered after being contacted by Attorney George West. The Court believed that detention was necessary because the violation had occurred so soon after commencement of supervised release and Defendant's meeting with U.S.P.O. Picozzi. These circumstances caused the Court to doubt whether Defendant would abide by any conditions of release and whether he would appear for the violation hearing if released.

When Defendant next appeared before the Court on February 11, 2008, he had been held in custody for more than three weeks. The Court was informed that Defendant's mother, who resided alone in Rhode Island, had Stage 4 ovarian cancer. The Court was also advised that Defendant wished to provide assistance to his mother.[4] In light of these circumstances and the fact that the alleged violation did not involve any new criminal activity and that Defendant had surrendered voluntarily on the warrant, the Court advised Defendant that if he waived a violation hearing and admitted to the violation, the matter would be continued four days to February 15, 2008, and the Court would instruct the Probation office to: a) investigate a potential residence for

[4] Defendant's mother has since died.

Defendant which would be suitable for home confinement with electronic monitoring, and b) arrange a program of mental health treatment for Defendant. If the Probation office confirmed the suitability of the residence and the availability of mental health treatment, the Court stated that Defendant would be released from incarceration and that he would be required to be in the residence between the hours of 7:00 p.m. and 6:00 a.m. and that he would also be required to participate in the mental health treatment arranged by the Probation office. The violation would be continued for sixty days. If Defendant complied fully with these conditions of release as well as all of the other conditions of supervised release, the Court told Defendant that it would recommend that Defendant not be incarcerated for the instant violation. The Court also advised Defendant that if he violated any of these conditions of release, he would be brought back before the Court prior to April 15, 2008, and that the Court would probably recommend a sentence of incarceration for the instant violation.

After being so advised, Defendant waived a violation hearing and admitted to the violation. In accordance with the procedure announced by the Court, the matter was continued to February 15. On that date, the Court having received confirmation from the Probation office that the proposed residence for Defendant was suitable and that a program of mental health treatment for Defendant had been arranged, Defendant was released from custody on the terms and conditions stated above. Defendant had been held in detention twenty-nine days.

On April 15, 2008, the Court received a favorable report from U.S.P.O. Pletcher, indicating that Defendant had fully complied with the conditions set on February 15, 2008. Accordingly, I recommend that Defendant be continued on supervised release and that no additional punishment be imposed

for his January 9, 2008, violation.

In making this recommendation, the Court is strongly influenced by the following facts. The violation did not involve any new criminal activity. Defendant was held in custody from January 17, 2008, to February 15, 2008, a period of twenty-nine days. That period of incarceration closely followed the violation, a circumstance which the Court believes was important in conveying the message to Defendant that disregarding the conditions of his supervised release has serious consequences. Further incarceration at this point, after Defendant has been back in the community for more than sixty days, would serve no positive purpose and could have a negative effect on Defendant's further compliance. The primary objective here is to obtain Defendant's compliance with the terms of his supervised release. It appears that compliance has been achieved (at least for the present) by the approach taken by this Magistrate Judge. Accordingly, the Court rejects the Government's recommendation for a period of additional incarceration.

**Conclusion**

After considering the various factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend that Defendant be continued on his original three year term of supervised release with special conditions. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
April 21, 2008